IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY LUELLEN, on behalf of herself and on behalf of the estate her deceased son MARTESE TATE,<br><br>    Plaintiff,<br><br> v.<br><br>THE CITY OF CHICAGO, CHICAGO POLICE OFFICER DAVID (#18491), OFFICER VALDEZ (#8868), and J. DOE CPD OFFICERS 1-5,<br><br>    Defendants. | No. 21-CV-5626<br><br>Hon. Judge Mary M. Rowland<br><br>Hon. Mag. Judge Jeffrey Cole<br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA DUCES TECUM**

Plaintiff Kimberly Luellen, by and through her undersigned counsel at First Defense Legal Aid, and pursuant to the Federal Rules of Civil Procedure, brings this motion seeking court-ordered compliance with a document subpoena sent to third party Donald Robinson, and other relief, and in support thereof states as follows:

**INTRODUCTION AND FACTUAL BACKGROUND**

The instant action revolves, in part, around a confidential law enforcement PowerPoint containing the pictures and alleged criminal histories of a number of children as young as ten that was leaked by Chicago police to Donald Robinson and subsequently posted by Mr. Robinson to Facebook.[1]

---

[1] It is worth noting that both disclosures, from CPD to Mr. Robinson and from Mr. Robinson to his Facebook, occurred in likely violation of Illinois Juvenile Court Act, which protects law enforcement records

In December of 2020, Mr. Robinson, who previously worked for a number of news outlets, Dkt. 54 at 2-3, posted images from these confidential law enforcement PowerPoints on his personal Facebook page. Dkt 50. ¶¶ 56-74. The PowerPoint slides in these posts shared included a photograph of Plaintiff Kimberly Luellen's now-passed son Martese Tate and had the words "on life support" superimposed over the mug shot, a reference to Mr. Tate's status at the time in a coma. Dkt. 50 ¶ 61. Mr. Robinson described the source of the documents as "insiders," Dkt. 50 ¶¶ 74, and Ms. Luellen brought suit against the J. Doe CPD officers believed to have leaked this information on both constitutional and state law theories.

The source of these images is relevant and of critical interest to all parties in this case as the subpoenaed records showing of the origin of the PowerPoints will contain the names of putative defendants currently identified in this matter only as J. Does. Less relevant here, but meriting mention, is that the source is likely also of interest to Defendant City given prior statements from CPD Bureau of Internal Affairs officials to Ms. Luellen that the leak is "priority #1" for internal affairs, that the actions were "clearly illegal," and that BIA expects to "have to strip some officers" of their titles because of the behavior. Dkt. 50 ¶¶ 83-84.

On February 21, 2022, Plaintiff issued a subpoena for Mr. Robinson seeking:

Documents (emails, text messages, other correspondence, or other records) sufficient to show the origin of Chicago Police "possible 2nd/MVT hijacking crew" and "juvenile recidivists" powerpoint slides that were transmitted to you by "insiders" and subsequently posted to Facebook by you in or about December of 2020.

**Exhibit 1**, Subpoena Duces Tecum to Donald Robinson.

---

relating to juveniles from public disclosure. *See* 705 ILCS 405/1-7. Mr. Robinson, for his part, did not seem to mind this, noting with the Facebook posts that "I DON'T CARE THAT MANY ARE JUVENILES" and "I DO NOT CARE HOW OLD THEY ARE, BUT THESE FACES NEED TO BE EXPOSED." Dkt. 50, Exhibit 4; **Exhibit 5** to this Motion, redacted Facebook post of Donald Robinson.

After multiple attempts, the subpoena was finally personally served on Donald Robinson via an adult member of his household who agreed to accept service on Mr. Robinson's behalf on March 3, 2022. **Exhibit 2**, Proof of Service. The deadline for compliance outlined by the subpoena was March 17, 2022, **Exhibit 1**, a reasonable time given that the only documents sought by the subpoena were those sufficient to identify the origin of identified Facebook postings from a discrete time period, not those implicating any other aspect of Mr. Robinson's life, work, or social media activity or that were otherwise voluminous.

Mr. Robinson filed a motion to quash the subpoena on March 8, 2022, Dkt. 54, which this Court denied on March 10, 2022, Dkt. 56. On March 20, 2022, three days after the deadline for compliance with the subpoena, Plaintiff's counsel, believing that Mr. Robinson may not have been aware of the Court's ruling and concomitant need for compliance, emailed the Court's Order to Mr. Robinson at the address provided on his motion asking when Plaintiff could expect production of responsive records. **Exhibit 3**, March 20-21, 2022 email correspondence with Donald Robinson. Mr. Robinson responded that he was seeking an attorney for the matter. **Exhibit 3**.

On March 25, 2020, eight days after compliance with the subpoena was due, Mr. Robinson emailed Plaintiff's counsel on his own accord explaining that he was still seeking an attorney and sharing his thinking regarding his options for finding counsel. **Exhibit 4**, March 25-27, 2022 email correspondence with Donald Robinson. Later that day, Plaintiff's counsel informed Mr. Robinson that Plaintiff planned to file a Motion to Compel, advised Mr. Robinson to get an attorney, informed Mr. Robinson that potential sanctions accompany a losing party on a Motion to Compel, and asked whether Mr. Robinson would agree to electronic service for future court filings, namely, this Motion. **Exhibit 4**. Mr. Robinson responded that he was uncomfortable with corresponding with Plaintiff's counsel because he felt "pressured" and further surmised about the potential for

3

judicial involvement or an appointed attorney, at which point Plaintiff's counsel cced all counsel of record in the matter, informed Mr. Robinson again that he was not Mr. Robinson's attorney, advised Mr. Robinson again to get an attorney, and informed him that he would mail the Motion to Compel when it was filed. **Exhibit 4**. Mr. Robinson responded directly, off-thread, only to Plaintiff's counsel with questions about the motion, but Plaintiff's counsel, mindful of Mr. Robinson's stated discomfort with such correspondence, did not respond. **Exhibit 4**. Plaintiff's counsel also forwarded this final correspondence from Mr. Robinson to Defendants' counsel.

Mr. Robinson did not make any objections to this subpoena following his motion to quash, and nor has he produced a privilege log to the extent that he is claiming privilege from disclosure.

On March 27, 2022 and April 5, 2022, Plaintiff's counsel corresponded with counsel for Defendants regarding the instant motion, and Defendants indicated that they take no position on the motion. Now, more than a month after the subpoena was served and weeks after compliance was due, Plaintiff brings this Motion to compel production of the sought records.

## ARGUMENT

I. **THE NARROW SUBPOENA IS REASONABLE AND DOES NOT POSE AN UNDUE BURDEN ON MR. ROBINSON**

Because the instant subpoena is reasonable and does not pose an undue burden on Mr. Robinson, the Motion should be granted.

A third-party subpoena "directed to the media, like any other subpoena duces tecum, [must be] reasonable in the circumstances, which is the general criterion for judicial review of subpoenas." *Taylor v. City of Chicago*, No. 14 C 737, 2015 WL 6561437, at *3 (N.D. Ill. Oct. 29, 2015), quoting *McKevitt v. Pallasch,* 339 F.3d 530, 533 (7th Cir.2003). "The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D.Ill. Jan. 2, 2008)

4

"Whether a subpoena imposes an 'undue burden' upon a witness is a case specific inquiry that turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.' " *Builders Association of Greater Chicago v. City of Chicago,* No. 96 C 1122, 2001 WL 664453, at \*8 (N.D.Ill. June 12, 2001), quoting *American Electrical Power Co., Inc. v. United States,* 191 F.R.D. 132, 136 (S.D. Ohio 1999).

Here, an analysis of each burden factor tends towards compelled compliance.

**A. The Documents Sought are Squarely Relevant to the Instant Action**

The records sought by the subpoena are squarely relevant to the action, as they contain the name of a yet-identified defendant in the case, a fact strongly tending towards a rejection of any burden argument, and thus the granting of this Motion.

Mr. Robinson initially described the source of the PowerPoints as "insiders" in his Facebook post, Dkt. 50 ¶ 70, a fact which he expanded on in his Motion to Quash the subpoena by indicating that compliance with the subpoena could "put [the leakers] in danger of retaliation from the City of Chicago," suggesting further that these individuals are CPD or City employees. Dkt. 54. It is thus evident, or at least very likely, that the person who shared the confidential PowerPoints that Mr. Robinson subsequently posted unredacted on Facebook with children's full names, pictures, medical status, and alleged crimes is a City of Chicago employee, likely a Chicago police officer, and is a proper Defendant in this matter. This information is critical to the action, with Plaintiff's *respondeat superior*, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Due Process Privacy claims all turning in part or in whole on the identity of the leaker, or at minimum their status as an employee of Defendant City.

Identities of Doe defendants are squarely relevant in third party subpoenas, and other courts have refused to vacate and quash third party subpoenas targeted at identifying defendants to an action, even in the context of expedited discovery. *See, e.g.*, *Zambezia Film Pty, Ltd. v. Does*, No. 13 C 1321, 2013 WL 4600385 (N.D. Ill. Aug. 29, 2013).

B. **Plaintiff has Great Need for the Documents Sought**

The second undue burden factor also tends towards compliance. As noted above, the action currently is lacking a critical piece of information: the identities of certain defendants. The present subpoena attempts to get to the heart of the matter—who is actually liable for the Plaintiff's injuries. Without the identities of the Doe Defendants, Plaintiff cannot comprehensively prosecute her case, which involves the objectively serious issue of the unauthorized and illegal release of protected juvenile criminal and medical information to the public. The case is further brought under 42 U.S.C. § 1983, a statute whose purpose is in large part to deter official misconduct, raising the need and importance of the information. *See Robertson v. Wegmann*, 436 U.S. 584, 599 (1978) ("[s]ection 1983's critical concerns are compensation of the victims of unconstitutional action, and *deterrence of like misconduct in the future"*) (emphasis added).

Further, Plaintiff's need is highlighted by her inability to identify the source of the PowerPoints through discovery of Defendant City; the City has produced thousands of pages of records related to investigations into the leak, the materials encompassed in the leak, and other documents responsive to its searches during limited expedited discovery, and does not itself know who shared the records with Mr. Robinson. Plaintiff further has already taken the deposition of a Bureau of Internal Affairs Detective initially responsible for investigating the leak for CPD, who similarly was unaware of the identity of the leakers. She has exhausted other avenues to identify

6

these Defendants; there is no other way that Plaintiff is aware of to obtain this critically important information other than by subpoenaing Mr. Robinson.

### C. The Breadth of the Subpoena is Narrow

Further supporting the granting of this Motion is the fact that the subpoenaed document scope is narrow. Plaintiff does not seek all communications between police officers and Mr. Robinson, nor his notes regarding this post or the officers who gave him the information that he posted to Facebook, nor indeed information about any other Facebook posts whatsoever. It does not seek records for months or years of Mr. Robinson's life. Rather, it limits itself to records sufficient to show the origin of the leaked documents related to time-limited activity on Facebook. It is, and was designed to be, less invasive than requiring Mr. Robinson to sit for a deposition—Plaintiff attempted to focus squarely on what is reasonable, relevant, and necessary by sending only a document subpoena to Mr. Robinson, though it was and is her right to subpoena Mr. Robinson to testify under oath.

### D. The Particularity with which the Documents are Described also Supports Compliance

In this instance, there is no question as to what documents Plaintiff seeks: those that will show the origin of the illegally leaked and illegally posted documents. Plaintiff has not instructed Mr. Robinson to rummage through years of files to identify records that may or not be relevant, nor asked him to make judgment calls as to whether a given record falls under the purview of the subpoena. The language is simple:

> Documents (emails, text messages, other correspondence, or other records) sufficient to show the origin of Chicago Police "possible 2nd/MVT hijacking crew" and "juvenile recidivists" powerpoint slides that were transmitted to you by "insiders" and subsequently posted to Facebook by you in or about December of 2020.

**Exhibit 1.**

7

The subpoena describes the time period of the post (December 2020) and the titles of the documents in question ("possible 2nd/MVT hijacking crew" and "juvenile recidivists"), and further specifies that documents reflecting the origin of the material posted on Facebook are to be produced. Plaintiff is not fishing, nor is she overreaching—she seeks limited, specific records essential to the prosecution of her claim, and has described them with particularity.

### E. The Burden Imposed by the Subpoena is Minimal

Finally, the burden imposed by the subpoena on Mr. Robinson is minimal. Plaintiff is not seeking the disclosure of notes from all of his correspondences with members of the Chicago police department, and, as noted with regard to particularity, is not even seeking particularly many documents in the first place. She simply wants records that will allow her to hold the officers who leaked confidential, personal, private information about her son accountable for their actions.

Mr. Robinson is a prolific Facebook poster and former journalist who indicates that his current occupation is in e-sports via commentating on the happenings of Madden Football video games. Dkt. 54. It is unlikely that revealing the origin of illegally disseminated law enforcement presentations about juveniles suspected of crimes, presentations that he subsequently illegally disseminated himself, would interfere with his present livelihood. It is similarly dubious that complying with a court order to produce records of this type would impact his potential journalistic livelihood should he return to newsgathering in the future.

In this Circuit, subpoenas to journalists are treated like any other subpoena. *Taylor v. City of Chicago*, No. 14 C 737, 2015 WL 6561437, at *10 (N.D. Ill. Oct. 29, 2015), citing *McKevitt v. Pallasch*, 339 F.3d at 533 ("We do not see why there need to be special criteria merely because the possessor of the documents or other evidence sought is a journalist."). And the types of harms that Mr. Robinson identified in his motion to quash related to possible burdens of compliance with

8

a subpoena would pose to his desire to work in the press at some point in the future are speculative, and have been rejected by other courts in this District in a burden context. *See, e.g.*, *Mosely v. City of Chicago*, 252 F.R.D. 421, 424; 431-432 (N.D. Ill.), *order vacated in part on reconsideration sub nom. Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D. Ill. 2008) (journalist's assertion of harms related to compliance with subpoena were "speculative" and lacking in specificity and particularity needed to establish burden or good cause); *Thayer v. Chiczewski*, 257 F.R.D. 466, 470 & n.5 (N.D.Ill. 2009) (finding unpersuasive a journalist's "work product" and "loss of 'street cred'" arguments regarding future access to sources for their absence of evidentiary support and a "showing of actual burden").

In short, all salient factors weigh towards the granting of this Motion.

## II. NO REPORTER'S PRIVILEGE PERMITS NON-COMPLIANCE

### A. The Illinois Reporter's Privilege has been held to be Inapplicable in Federal Cases, and there is no Federal Common Law Journalistic Privilege that Applies

In this Court's Order denying Mr. Robinson's Motion to Quash Subpoena, and in other rulings from this Circuit and from the Supreme Court, judges have indicated that the qualified Illinois Reporter's Privilege does not apply in federal question cases and that a federal common law journalistic privilege does not exist in the first place. Although Mr. Robinson has waived the ability to raise privilege arguments and objections by his failure to provide a privilege log, *supra* section II.C, this Motion nonetheless outlines why the Court should further grant the instant Motion despite the generalized claims made in Mr. Robinson's Motion to Quash.

The Seventh Circuit has held that the Illinois statutory reporter's privilege, 735 5/8-901, is inapplicable in federal question cases, as have multiple courts in this district. *McKevitt v. Pallasch,* 339 F.3d at 533; The Seventh Circuit wrote explicitly in *McKevitt* that "[s]tate-law privileges are not 'legally applicable' in federal-questions cases like this one." *Id*.

9

Similarly, the Supreme Court, Seventh Circuit, and courts in this District have also held that there is no "federal reporter's privilege" that adopts a special standard for individuals claiming to have taken actions in a reporting or newsgathering capacity. *Thayer*, 257 F.R.D. at 468, citing *Branzburg v. Hayes*, 408 U.S. 655, 683 (1972) (in context of confidential sources) and *McKevitt*, 339 F.3d at 532-533 (roundly rejecting such a privilege post-*Branzburg* in the context of non-confidential sources); *Wilson v. O'Brien,* No. 07 C 3994, 2009 WL 763785 (N.D.Ill. Mar. 20, 2009); *see also United States Dept. of Educ. v. National Collegiate Athletic Ass'n.*, 481 F.3d 936,938 (7th Cir.2007) ("There isn't even a reporter's privilege in federal cases.")

Multiple district courts have rejected the recognition of a journalist or reporter's privilege enforcing subpoenas to third parties and parties with varying degree of connections to news media. For example, in *Mosely v. City of Chicago*, this Court ordered partial production of records from a Chicago Magazine reporter that were responsive to a broad subpoena that sought recordings of conversations with sources as well as notes and summaries of conversations with interview subjects. *Mosely v. City of Chicago*, 252 F.R.D. 421, 424 (N.D. Ill.), *order vacated in part on reconsideration sub nom. Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D. Ill. 2008)

Similarly, in *Beverly v. Watson*, a court considered a circumstance where a party sought disclosure of confidential sources from the plaintiff in that action. No. 14 C 4970, 2016 WL 3633316 (N.D. Ill. July 7, 2016). Though that action involved a party rather than a third party witness, the court concluded that in the Seventh Circuit, there is no "per se rule that a confidential source must be protected" en route to ordering the party to answer questions previously objected to as being protected by a qualified reporter's privilege. *Id.* at *8. (The Court there offered alternate outcomes to the parties in its ruling, such as a stipulation limiting uses of the sought material, but

this aspect of the holding is not relevant here because there is no stipulation that could allow Plaintiff to prosecute her action without the identity of the leaker of the documents.).

In *Taylor v. City of Chicago*, the court went as far to say as the proposition that there is a qualified reporter's privilege in this Circuit "requires little discussion" en route to dismissing the argument—such is the state of the law. No. 14 C 737, 2015 WL 6561437, at *2 (N.D. Ill. Oct. 29, 2015).

Considered alongside the holdings of the Supreme Court and Seventh Circuit, and multiple district courts, Mr. Robinson's illegal act of posting illegally leaked CPD PowerPoints containing images and information about children as young as ten years old accused of crimes to his personal Facebook page does not provide a basis for noncompliance, and the Motion should be granted.

### B. Mr. Robinson is not a Reporter under the Illinois Reporter's Privilege Act in the Present Case, nor is his Personal Facebook Page a News Medium under the Act Here

The Illinois Reporter's Privilege Act defines the terms "reporter" and "news medium," and Mr. Robinson's action of posting CPD PowerPoints of juveniles to his personal Facebook page fits neither definition.

The Act defines a reporter as:

> …any person regularly engaged in the business of collecting, writing or editing news for publication through a news medium on a full-time or part-time basis; and includes any person who was a reporter at the time the information sought was procured or obtained.

735 ILCS 5/8-902(a). Mr. Robinson, by his own admission, is not engaged in writing, collecting, or editing news for publication through a news medium on a full-time or part-time basis. Dkt. 54. He states in his Motion to Quash that he conducts interviews with participants in the Madden Football video game franchise through the company Complete4Ever e-Sports, but his resume indicates that his last employment at a news media organization was in 2017; he has not been "collecting, writing or editing news for publication through a news medium" since that time.

11

Dkt. 54 at 3; 735 ILCS 5/8-902(a). His work with Complete4Ever e-Sports, on video game commentary, does not qualify him as a reporter under the statute for these purposes, particularly because the Facebook post depicting about juveniles accused of criminal activity did not relate to or implicate his employment at Complete4Ever e-Sports.

Further, Mr. Robinson's Facebook is not a "news medium" as the term is defined in the Act. The Act defines a news medium as:

> …any newspaper or other periodical issued at regular intervals whether in print or electronic format and having a general circulation; a news service whether in print or electronic format; a radio station; a television station; a television network; a community antenna television service; and any person or corporation engaged in the making of news reels or other motion picture news for public showing.

735 ILCS 5/8-902(b). Mr. Robinson's personal Facebook page does not in this case qualify as a news medium under the Act. It is not a newspaper or periodical, nor a news service, radio station, television station or network, community antenna television service, or engaged in the making of news reels or other motion picture news. Mr. Robinson posts on his Facebook about varying areas of interest to him, including his birthday celebrations, food promotional codes, memes, movies, and the instant PowerPoints. The fact that Mr. Robinson views his Facebook "one of his outreach platforms over the years" does not here render it a "news medium" for the purposes of this disclosure. Dkt. 54 at 1; 735 ILCS 5/8-902(b).

## C. Defendant Waived Any Privilege Objections by Failing to Produce a Privilege Log

Because Mr. Robinson did not make a clearly delineated claim of privilege as to the records he is currently withholding, he has waived the ability to raise privilege arguments in the first place to the degree that he has attempted to raise them.

Federal Rule of Civil Procedure 45(d)(2)(A) states that a claim of privilege "shall be supported by a description of the nature of the documents, communications, or things not produced

that is sufficient to enable the demanding party to contest the claim." This Court has previously held that a failure to prepare such a log in response to a subpoena where privilege may be claimed constitutes a waiver. *Mosley v. City of Chicago*, 252 F.R.D. at 449.

In the present case, Mr. Robinson has produced no such log, and neither did he timely lodge any objections to the subpoena following the denial of the motion to quash. When Plaintiff's counsel sent the Court's order denying the motion to compel on March 20, 2022, three days after compliance was due, Mr. Robinson again did not raise any objection or privilege, nor did he do so in the following weeks prior to the filing of this motion.

As a result, to the extent that Mr. Robinson asserts a privilege, such privilege argument has been waived.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order:

a) Granting the motion and requiring Mr. Robinson produce subpoenaed records;

b) Specifying that Mr. Robinson is to be held in indirect contempt of court each day he fails to produce subpoenaed records after seven days from this Court's order, should the Motion be granted;

c) Imposing sanctions on Mr. Robinson by requiring him to pay Plaintiff's expenses, including reasonable attorney's fees, incurred in the making of this Motion, should it be granted; and

d) For any such other relief as the Court deems proper and just.

Respectfully Submitted,

/s/Daniel E. Massoglia

*One of Plaintiff's Attorneys*

Daniel Massoglia

13

First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708 797-3066
E: daniel@first-defense.org

**Certificate Of Service**

I, Daniel Massoglia, an attorney, certify that a copy of this document was filed before 11:59pm on April 11, 2022 using the Court's CM/ECF system, which generates electronic notice to all counsel of record in the matter. Further, I certify that a copy of this Motion and exhibits was mailed to non-party Donald Robinson at the address listed on the resume he filed with the Court (Dkt. 54 at 3), the same address at which he was served the subpoena, by USPS Priority Mail on or before 11:59pm on April 11, 2022.

Respectfully submitted,

Daniel Massoglia
*One of Plaintiff's Attorneys*

Daniel Massoglia
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708 797-3066
E: daniel@first-defense.org

-

15